**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Mark Gardner, et al.,

Plaintiffs,

v.

Civil No. 00-2176 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

First American Title Insurance Company, et al.,

Defendants.

---

J. Gordon Rudd, Jr., Hart L. Robinovitch and David Cialkowski, Zimmerman Reed P.L.L.P., Minneapolis, Minnesota; Barry G. Reed, Zimmerman Reed P.L.L.P., Scottsdale, Arizona; and Laura Miller, Miller, Olson & Associates, St. Anthony, Minnesota, for Plaintiffs.

Charles A. Newman and Douglas W. King, Bryan, Cave, McPheeters & McRoberts, St. Louis, Missouri; and Janice M. Symchych and Ruon Sawyer, Dorsey & Whitney, Minneapolis, Minnesota, for Defendants.

---

**Introduction**

Plaintiffs Mark Gardner and Danielle Baker (collectively, "Plaintiffs") have brought this action alleging Defendants First American Title Insurance Company, Universal Title Company, and Universal Partnerships, Inc., (collectively, "Defendants") used "23 identical sham 'title agencies'" to bypass the Real Estate Settlement Procedures Act's (RESPA) prohibition against kickbacks and referral fees. Before the Court is Plaintiffs' Motion for Class Certification. Plaintiffs seek to represent a class consisting of

FILED JAN 27 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

"[a]ll persons who, between September 21, 1994 and the present, were party to any federally-related loan settlement transaction where title or settlement service business was referred to a title agency limited partnership in which any of the Defendants acted as the general partner." (Pls.' Not. of Mot. and Mot. for Class Cert. at 1.) For the reasons set forth below, the Court will deny the motion.

## Background

### I. The Parties

#### A. The Defendants

First American Title Insurance Company ("First American") is a national insurance underwriter that issues insurance policies written or committed to by its agents. (Robinovitch Aff. Ex. 1 (Philipsek Dep.) at 20.) Among those agents is Universal Title Company ("Universal Title"), a wholly owned subsidiary of First American that performs abstracting, title insurance, and closing services. (Id. at 16-17.) Universal Partnerships, Inc. ("Universal Partnerships") is, in turn, a wholly owned subsidiary of Universal Title and acts as the general partner for twenty-four limited partnership general agencies in Minnesota and one in Missouri. (Id. at 29.)

#### B. The Named Plaintiffs and Their Transactions

On January 28, 2000, Plaintiff Mark Gardner purchased a home at 1100 McCammon Avenue, in Saint Paul, Minnesota. (Robinovitch Aff. Ex. 5 (Gardner Dep.) at 33.) Gardner's realtor, Bridget Schmidt, informed him that Diamond Title would

handle his title. (Id. at 34.) Gardner signed an disclosure form indicating that Ms. Schmidt had an ownership interest in Diamond Title. (Robinovitch Aff. Ex. 24. (Gardner Notice Form).) Gardner's settlement occurred at Universal Title. (Id.)

Plaintiff Danielle Baker purchased a home at 14322 Empire Avenue, in Apple Valley, Minnesota, on October 28, 1999. (Robinovitch Aff. Ex. 46 (Baker HUD-1 Form) at 1.) Baker's mortgage was handled by Sally Wanner, a mortgage broker at Bank of America. (Robinovitch Aff. Ex. 6 (Baker Dep.) at 17-18.) While documents indicate Pinnacle Title Insurance ("Pinnacle Title") was the title agency for Baker's transaction, (see Robinovitch Aff. Ex. 54 (Pinnacle Title Memorandum of Charges)), Baker does not recall any mention of Pinnacle Title (see Robinovitch Aff. Ex. 6 at 28). To date, the parties' discovery has not uncovered any disclosure forms signed by Baker. (Defs.' Mem. Opp'n Class Cert. at 9.) Baker's settlement occurred at Universal Title. (Robinovitch Aff. Ex. 6 at 29.)

The general partner for both Diamond Title and Pinnacle Title is Universal Partnerships.

## II. RESPA , Referral Fees, and Affiliated Business Arrangements

Congress enacted RESPA to ensure greater disclosure of real estate settlement fees and to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). Among Congress's goals was "the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain

settlement services." Id. § 2601(b)(2). Accordingly, RESPA states:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

Id. § 2607(a).

RESPA, however, provides a statutory exemption for "affiliated business arrangements."[1] An affiliated business arrangement is a real estate settlement service provider in which a person (such as a realtor) in a position to refer settlement services has an ownership interest. Id. § 2602(7). While RESPA does not permit realtors or other referrers to receive fees directly for referrals to such a provider, they may receive a return on their investment. Id. § 2607(c). Thus, under RESPA's affiliated business arrangement exception, a person who refers business to a settlement service provider in which he has an ownership interest can receive compensation, albeit indirectly, based on the financial growth of that provider. Id.

---

[1] RESPA defines these arrangements as:

> [A]n arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.

Id. § 2602(7).

To qualify for this exception, an affiliated business arrangement must meet a four-part test. First, it must be a "bona fide provider" of settlement services. See HUD Statement of Policy 1996-2, Regarding Sham Controlled Business Arrangements, 61 Fed. Reg. 29258 (June 7, 1996). HUD has read this requirement onto RESPA's statutory language after finding that "sham arrangements" had arisen as "subterfuge for passing referral fees back to the referring party" without providing actual settlement services.[2] Id. Second, the affiliated business arrangement must disclose the nature of its relationship with the referring agent to the person being referred. 12 U.S.C. § 2607(c). Third, the affiliated business arrangement must not require the person being referred use any particular provider of settlement services. Id. Finally, the person referring business to the affiliated business arrangement must receive payments only in the form of a return on investment.[3] Id.

---

[2] HUD weighs ten factors in determining whether an affiliated business arrangement is a "bona fide" or "sham" service provider: (1) does the entity have sufficient initial capital and net worth; (2) is the entity staffed with its own employees; (3) does the entity manage its own business affairs; (4) does the entity have a separate office; (5) are substantial services provided by the entity; (6) does the entity perform substantial services by itself; (7) if the entity contracts out services, are they from an independent company; (8) if the entity contracts out work to another party, is the party performing any contracted services receiving a payment for services of facilities provided that bears a reasonable relationship to the value of the services or goods received; (9) is the new entity actively competing in the marketplace for business; and (10) is the entity sending business exclusively to one of the settlement providers that created it. Id.

[3] To determine whether a payment is a return of investment or a payment for referrals, HUD considers whether (1) each owner or participant in the new entity made an investment of its own capital, as compared to a "loan" from an entity that receives the benefits of referrals; (2) the owners or participants of the new entity received an

Here, Plaintiffs allege the 25 limited partnerships in which Universal Partnerships is the general partner fail to meet each of these four requirements. (See Am. Compl. ¶¶ 58-60, 61, 62, 63.) Because these partnerships provide compensation to limited partners who refer business (see Robinovitch Aff. Ex. 1 at 37-38), the failure of Defendants' partnerships to meet any one of these requirements would be sufficient for Plaintiffs to establish RESPA violation. See 12 U.S.C. §§ 2606 (a), (c).

## III. Plaintiffs' Complaint

Plaintiffs assert three causes of action. First, Plaintiffs allege Defendants have established sham affiliated business arrangements involving title companies structured as limited liability companies to facilitate the payment of referral fees and other prohibited things of value in violation of RESPA and other law. (Am. Compl. ¶ 83.) Specifically, Plaintiffs claim Defendants have violated 8(a) and (b) of RESPA by paying, receiving, or exchanging unearned fees made for rendering a settlement service in connection with a transaction involving a federally-related loan other than for services actually performed. (Id. ¶ 87.) Plaintiffs seek injunctive relief, actual damages—including an amount equal to

ownership or participant's interest based on fair value contribution? Or is it based on the expected referrals to be provided by the referring owner or participant to a particular cell or division within the entity; (3) the dividends, partnership distributions, or other payments are made in proportion to the ownership interest (proportional to the investment in the entity as a whole) or is it based on the expected referrals to be provided by the referring owner or participant to a particular cell or division within the entity; and (4) the ownership interests in the new entity are free from tie-ins to referrals of business or have there been any adjustments to the ownership interest in the new entity based on the amount of business referred. Id.

three times the amount of the prohibited fees exchanged—and reasonable attorneys' fees and costs. (Id. ¶¶ 90-91.) Both the trebling of damages and the attorneys' fees are statutory. See 12 U.S.C. 2607(d).

Second, Plaintiffs assert Defendants have entered into contracts with the limited partnerships to be the sole provider of certain real estate and mortgage closing services in violation of RESPA. (Am. Compl. ¶¶ 93-94.) Under Plaintiffs' theory, they had no choice but to use Universal Title as the settlement closing agent and First American as the provider of title insurance. (Id.) As with the first cause of action, Plaintiffs seek injunctive relief, damages equal to three times the amount of any fees exchanged, and attorneys' fees.

Finally, Plaintiffs assert Defendants' purported "sham and hollow title companies" influenced Plaintiffs' fiduciaries to refer Plaintiffs' business to First American and Universal Title in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.12-13[4] and § 325D.43-48,[5] and the Minnesota Consumer Fraud Act, Minn. Stat. §

---

[4] The Minnesota Deceptive Trade Practices Act provides, in pertinent part, "[n]o person engaged in the sale of merchandise at retail shall, in connection with such business, misrepresent the true nature of such business, either by use of the words manufacturer, wholesaler, broker, or any derivative thereof or synonym therefore, or otherwise." Minn. Stat. § 325D.12.

[5] The Act further provides, in pertinent part, that a person engages in a deceptive trade practice when, in the course of business, that person:

> (1) passes off goods or services as those of another; (2) causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes likelihood of confusion or of

325F.68, et seq.[6] (collectively, "Minnesota UDAP statutes"). (Am. Compl. ¶ 108.) In connection with these claims, Plaintiffs seek monetary and injunctive relief, as well as attorneys' fees under Minn. Stat. § 8.31. (Id. ¶ 103.)

**Analysis**

## I. Standard of Decision

The Court may certify a class action "only when it is satisfied after rigorous analysis that all of Rule 23's prerequisites are met." Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995) (Kyle, J.). Rule 23(a) of the Federal Rules of Civil Procedure sets out four threshold prerequisites that must be satisfied before a party can obtain class certification:

---

> misunderstanding as to affiliation, connection, or association with, or certification by, another; (4) uses deceptive representations or designations of geographic origin in connection with goods or services; (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval status, affiliation, or connection that the person does not have; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

Minn. Stat. § 325D.44.

[6] Under the Minnesota Consumer Fraud Act:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn. Stat. § 325F.69.

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to the prerequisites of Rule 23(a), the movant must demonstrate that a class action can be maintained under one of the three categories described in Rule 23(b). Fed. R. Civ. P. 23(b).

The party seeking class certification bears the burden of showing that the requirements of the rule are satisfied and that the class should be certified. See General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982); Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). Although a court should not decide the merits of a case at the class certification stage, see Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), a motion for class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (citations and internal quotation marks omitted).

## II. The Rule 23(a) Requirements

### A. Numerosity

"In order to maintain a class action, Plaintiffs must show that the class of plaintiffs is so large that joinder of all members would be 'impracticable.'" In re Potash Antitrust

Litig., 159 F.R.D. 682, 689 (Kyle, J.) (citing In re Federal Skywalk Cases, 680 F.2d 1175, 1178 (8th Cir. 1982)). Although the Plaintiffs need not show that joinder of all class members would be impossible, they must show that it would be difficult. See Lockwood Motors, 162 F.R.D. at 574 (citing Jenson v. Continental Fin. Corp., 404 F. Supp. 806, 809 (D. Minn. 1975) (Lord, J.)).

Here, the Defendants processed over 37,000 transactions like Gardner and Baker's from September 21, 1994 to the present. Defendants do not challenge the proposed class on numerosity grounds.

### B. Commonality

The second provision of Rule 23(a) requires that the Plaintiffs show "that there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While not every question of law and fact must be common to the entire class, the Plaintiffs must show that the course of action giving rise to their cause of action affects all putative class members, or that at least one of the elements of that cause of action is shared by all of the putative class members. See Lockwood Motors, 162 F.R.D. at 575 (citing Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101, 1106 (5th Cir. 1993)). Because commonality requires only one common question of law or fact, courts often find the requirement to be satisfied. See 5 Moore's Federal Practice, § 23.23[2].

Defendants vigorously attack the proposed class's commonality. These arguments, however, are more germane to the *predominance* of common legal and factual issues than

to their *existence*, and will be discussed below. Whatever individual issues exist, the proposed class is linked by its attack on Defendants' business model. The issue of whether Defendants' partnerships satisfy RESPA's affiliated business arrangement exemption provides a legal question that is common to the entire class. Accordingly, the Court concludes Plaintiffs' satisfy the commonality requirement.

### C. Typicality

The third requirement of Rule 23(a) calls for the party seeking certification to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality" under Rule 23(a)(3) suggests "'there are other members of the class who have the same or similar grievances as the [representative] plaintiff.'" Chaffin v. Rheem Mfg. Co., 904 F.2d 1269, 1275 (8th Cir. 1990) (quoting Donaldson v. Pillsbury Co., 554 F.2d 825, 830 (8th Cir. 1977)). "Typicality is satisfied when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." Lockwood Motors, 162 F.R.D. at 575.

Defendants assert that the named plaintiffs are "not even typical of each other, much less of an entire nationwide class." (Defs. Mem. Opp'n Class Cert. at 17.) Defendants note that although Gardner signed a disclosure form advising him of his realtor's affiliation with Diamond Title, discovery has not produced a similar form signed by Baker. As Defendants note, "the presence of the disclosure form in Mr. Gardner's file

presents defenses not available in Ms. Baker's case and raises individual issues as to what Ms. Baker was told and by whom." (Id.)

While the absence of a disclosure form in Baker's case *does* raise individual issues, the test for typicality is "fairly easily met" and only requires that the "relief sought in the action [be] the same." DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174-75 (8th Cir. 1994) (typicality requirement satisfied when class members held different mortgage instruments but sought same form of relief). "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825 (8th Cir. 1977). Here, Plaintiffs seek the same remedy as the proposed class and therefore step over typicality's low bar.

**D. Adequacy of Representation**

The fourth requirement of Rule 23(a) -- adequacy of representation -- is related to the typicality requirement. If the representative parties have interests or claims (or defenses to counterclaims) that are significantly different to that of the majority of class members, then neither typicality nor adequacy is present. See Potash, 159 F.R.D. at 692; In re Wirebound Boxes Antitrust Litigation, 128 F.R.D. 268, 270 (D. Minn. 1989) (Murphy, J.). To satisfy the adequacy requirement, the Plaintiffs must show "that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each representative's interests are sufficiently similar

to those of the class that it is unlikely that their goals and viewpoints will diverge." Potash, 159 F.R.D. at 692 (citing Wirebound Boxes, 128 F.R.D. at 270). Plaintiffs meet these requirements.

There is no evidence that Gardner or Baker would fail to prosecute this action in a manner that protects the best interests of the class. While Defendants point to Plaintiffs' lack of familiarity with aspects of the case and assert, quite persuasively, that Plaintiffs' attorneys have more at stake in the present matter than do the Plaintiffs themselves, Defendants cast no real doubt on Plaintiffs' incentives to prosecute vigorously. Baker and Gardner have each demonstrated a general understanding of the facts of the case, are not subject to defenses unique from the class, and have the same interests as those of the proposed class. Moreover, Plaintiffs' counsels' affidavit demonstrates more than a nodding acquaintance with consumer class actions. (See Aff. of Barry G. Reed.) Plaintiffs have therefore satisfied the requirements of Rule 23(a).

## III. The Rule 23(b) Requirements

In addition to the Rule 23(a) prerequisites, Plaintiffs must demonstrate that a class action can be maintained under one of the three categories described in Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiffs proceed under Rule 23(b)(3).[7]

---

[7] Plaintiffs also seek certification under Rule 23(b)(2), which provides for maintenance of a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs, however, have given only the slightest consideration as to why this action should be maintained as a class action for injunctive relief. See

### <u>A. Rule 23(b)(3)</u>

Under Rule 23(b)(3), a class action may be maintained where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) also lists a series of non-exclusive factors that are "pertinent" to these findings, including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). Defendants challenge Plaintiffs' ability to satisfy the predominance and superiority requirements of Rule 23(b)(3).

#### <u>1. Predominance</u>

"The predominance requirement of subdivision (b)(3) is 'far more demanding' than the 'commonality' requirement of subdivision (a)." <u>In re The Hartford Sales</u>

---

<u>Potter v. Norwest Mortgage, Inc.</u>, Civ. No. 99-1298 (RHK/JMM) (Kyle, J.) (rejecting request to certify class under 23(b)(2) on grounds that issue was inadequately briefed); <u>Levine v. North Am. Mortgage</u>, 188 F.R.D. 320, 330 n.18 (D. Minn. 1999) (Tunheim, J.) (same). Here, the primary relief sought by Plaintiffs is monetary rather than injunctive or declaratory relief. <u>See</u> <u>In re Old Kent Mortgage Co. Yield Spread Premium Litig.</u>, 191 F.R.D. 155, 164 n.7 (D. Minn. 2000) (Doty, J.) (refusing to address certification under Rule 23(b)(2) where primary relief sought was monetary damages); Advisory Committee's Note on the 1966 Amendment to Rule 23, 39 F.R.D. 69, 102 (1966). Having already spilt more ink on this issue than Plaintiffs did in their two briefs, the Court concludes that class certification under Rule 23(b)(2) is improper.

Practices Litig., 192 F.R.D. 592, 604 (D. Minn. 1999) (Kyle, J.) (quoting Amchem Prods. v. Windsor, 521 U.S. 591, 623-24, 117 S. Ct. 2231, 2250 (1997). The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623, quoted in Levine v. North Am. Mortgage, 188 F.R.D. 320, 330 (D. Minn. 1999) (Tunheim, J.) and Schmitz v. Aegis Mortg. Corp., No. Civ. 97-3142, 1998 WL 1100084 at *4 (D. Minn. Aug. 3, 1998) (Doty, J.). There is "no bright-line boundary" for determining predominance, Hartford Sales, 192 F.R.D. at 604, and the predominance inquiry requires "a pragmatic assessment of the entire action and of all the issues involved." 5 Moore's Federal Practice §23.46[1].

The Court concludes that Plaintiffs fail to meet the predominance requirement. In order to demonstrate a violation of RESPA § 8(a), there must "actually be a referral." Paul A. Barron, Federal Regulation of Real Estate ¶ 2.04[1][a][iii] (1st ed. 1983). Plaintiffs have phrased their class definition in the passive voice to include any person whose business "was referred" to a partnership controlled by Defendants. That definition, therefore, includes both those who were referred by a limited partner and those who were not. Because HUD's definition of a referral "includes any oral or written action directed to a person which has the effect of *affirmatively influencing* the selection of a settlement service," 24 C.F.R. § 3500.14(f) (emphasis added), the Court would have to individually adjudicate whether the use of Defendants title services in each of the 37,000 transactions at issue was, in fact, "affirmatively influence[d]," and by whom.

Moreover, as the Eighth Circuit has recently held, RESPA anticipates a "loan-specific"– or in this case "title-specific"– analysis "to determine the amount of damages warranted, if any." Glover v. Standard Fed. Bank, 283 F.3d 953, 965 (8th Cir. 2002). Under RESPA, the damages for a violation of the act are "equal to three times the amount of any charge paid for such settlement service." 12 U.S.C. § 2607(d). As the Eighth Circuit noted, "The plain language of RESPA, then, demands that there be a determination of which settlement services are provided in connection with *each* real estate settlement . . . ." Glover, 283 F.3d at 965 (emphasis added). While Plaintiffs assert that "in no transaction did any of the limited partners . . . perform any title 'services,'" (Pls.' Mem. Supp. Class. Cert at 18.), under the transaction-specific inquiry articulated in Glover, the Court cannot presume so blithely, even in light of the stray deposition comments cited by Plaintiffs.[8] In any case, the complexity of computing 37,000

[8] Plaintiffs drastically undermine their own credibility on this issue by asserting that the limited partners could not have provided settlement services *as a matter of law*. While the statutory provision cited does indicate that "[t]he contributions of a limited partner may be cash or other property, but not services," Minn. Stat. § 322.04, that section only applies to limited partnerships formed before 1981. See Minn. Stat. § 322A.86. Limited Partnerships– such as the partnerships at issue here– formed after that date are governed by the 1976 Uniform Limited Partnership Act, which states that "[t]he contribution of a [limited or general] partner may be in cash, property, *or services rendered* . . . ." Minn. Stat. § 322A.38. Moreover, the "safe harbor" provision of the 1976 Act states that "[a] limited partner does not participate in the control of the business . . . [by] being a contractor for or agent or employee of the limited partnership . . . ." Therefore, the limited partners clearly could have performed title services as a matter of law. Even were the statutory provision brandished by Plaintiffs applicable to these partnerships, its only effect would be to open the limited partner to the same liability as the general partner, a non-issue in this case. See In Re Allen's Estate, 41. Minn. 430, 431-32 (1889). In short, the provision is irrelevant and Plaintiffs' assertion that the

individual damage claims by itself is sufficient grounds for denying class treatment in this matter. See 5 Moore's Federal Practice § 23.46[2][b].

Furthermore, while Defendants' business practices may have common elements, Plaintiffs are actually challenging the conduct of 25 separate partnerships, with different places of business, different levels of capitalization, and different management. HUD's ten-point analysis would require the jury to examine each partnership separately; should only some of the partnerships satisfy RESPA's affiliated business arrangement exception, the Court would have to segregate class members' claims by partnership. More troublingly, under the transaction-specific inquiry articulated by the Eighth Circuit in Glover, the jury would have to apply HUD's ten-point test to each partnership's conduct during the time period relevant to every class members' claim. Such an inquiry, bewildering in its scope, is well beyond the bounds of class-wide adjudication.

Finally, Plaintiffs' focus on the inadequacy of Defendants' disclosure form highlights its central importance to the transactions underlying each class member's claim. While Plaintiffs assert that only a "handful of class members may not have received the disclosure form" (Pls.' Reply Mem. at 2), the Court– and presumably Plaintiffs– have no way of knowing whether this is true without conducting an individualized inquiry of each class member. The sample before the Court indicates only that Gardner received the form and Baker did not. Because Plaintiffs plan to use

"services defense" is precluded as a matter of law is patently false.

Defendants' form as an independent basis of liability, (see Pls.' Mem. Supp. Class Cert. at 17 (noting that Plaintiffs can prevail by merely demonstrating that "uniform [affiliated business arrangement] Disclosures which Defendants gave class members were fatally defective in a common way"); Pls.' Rep. Mem. at 1 ("Plaintiffs can prove inadequate [affiliated business arrangement] disclosure on a classwide basis because Defendants admit they used the same form in each transaction.")), the Court would have to sort those who received the form from those who did not– a task incompatible with a class action.[9]

While the common issues of fact *do* exist, they are overwhelmed by the complexity and sheer volume of individual issues that predominate this case. Accordingly, the Court concludes with little difficulty that Plaintiffs have not met the predominance factor.

**2. Superiority**

Likewise, Plaintiffs fail to demonstrate that a class action would be "the most efficient and effective means of settling the controversy." Wright & Miller, 7A Federal Practice and Procedure § 1779 (1986). Under Rule 23(b)(3), Plaintiffs must demonstrate

[9] Plaintiffs vigorously argue that *it doesn't matter* whether each member of the proposed class received the form because disclosure was faulty in every case; faulty disclosure and no disclosure, in other words, state the same statutory claim. This argument is flawed, however, because it presumes that Plaintiffs' challenge to Defendants' form will be successful. If the Court were to certify a class and the jury to conclude that Defendants' form meets HUD's requirements, then the claims of those for whom disclosure was entirely lacking– and who therefore state a clear RESPA violation– would fail alongside those who received the form. While the Court could solve this problem by limiting the class to those who received the form, that would require individualized fact finding of a kind forbidden by Rule 23(b)(3).

that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Plaintiffs have not met that burden here.

In order to encourage individual lawsuits, Congress has "guaranteed legal representation under RESPA by permitting attorneys' fees and costs as part of each allowable recovery." Glover, 283 F.3d at 965; see also 12 U.S.C. § 2607(d)(5). Despite Plaintiffs' counsel's assertion that "it would be difficult to find an attorney to take [such a] case," (Trans. of Oral Arg. at 21), the Court finds no shortage of cases on its docket filed under similar provisions. Indeed, in the present matter, HUD itself has investigated Defendants' practices and determined that corrective action was unnecessary. (See Philipsek Aff. Ex. 7 (April 1, 2002 letter from HUD stating HUD is "closing its investigation" and "will take no further action at this time.")); see also Glover, 283 F.3d at 962 (noting HUD's "specialized mission" and "experience"). Where Congress has charged an administrative agency with global oversight and provided attorneys' fees for individual enforcement, Plaintiffs must climb a steep hill to prove that a class action is superior to another method of adjudication. Here, where individual issues threaten to overwhelm the litigation, that hill proves insurmountable. Plaintiffs have therefore failed to demonstrate that a class action would be "superior to, and not merely as good as," Beebe v. Pacific Realty Trust, 99 F.R.D. 60, 73 (D. Or. 1983), another means of resolving the controversy.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Class Certification is **DENIED.**

Dated: January 27, 2003

RICHARD H. KYLE
United States District Judge