**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Mark Gardner, et al.,

Plaintiffs,

v.

Civil No. 00-2176 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

First American Title Insurance Company, et al.,

Defendants.

---

J. Gordon Rudd, Jr., Hart L. Robinovitch and David Cialkowski, Zimmerman Reed PLLP, Minneapolis, Minnesota; Barry G. Reed, Zimmerman Reed PLLP, Scottsdale, Arizona, for Plaintiffs.

Charles A. Newman, Douglas W. King, and Douglas R. Wilner, Bryan Cave LLP, St. Louis, Missouri; and Janice M. Symchych and Matthew E. Johnson, Halleland Lewis Nilan Sipkins & Johnson, Minneapolis, Minnesota, for Defendants.

---

## Introduction

This matter comes before the Court on cross motions for summary judgment. Plaintiffs Mark Gardner and Danielle Baker (collectively, "Plaintiffs") have brought this action alleging that Defendants First American Title Insurance Company, Universal Title Company, and Universal Partnerships, Inc. (collectively, "Defendants"), have violated the Real Estate Settlement Procedures Act's (RESPA) prohibition against kickbacks and



DEC 19 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

referral fees. Defendants have moved for summary judgment on the ground that their activities are subject to RESPA's exception for affiliated business arrangements. Plaintiffs assert that summary judgment is appropriate on the basis of Defendants' disclosures. For the reasons set forth below, the Court will grant Defendants' motion in part and deny Plaintiffs' motion.

## Background

### I. Introduction

RESPA prohibits the award of kickbacks or fees for the referral of "a real estate settlement service involving a federally related mortgage loan." 12 U.S.C. § 2607(a). While this prohibition sweeps broadly, there is a statutory exemption for affiliated business arrangements in which a person in a position to refer settlement business either owns part of or is affiliated with a settlement service provider. To qualify for this exception, an affiliated business arrangement must, among other things, disclose the relationship to the person whose business is referred.

Plaintiffs assert that the title companies providing their settlement services do not qualify for this exemption. Plaintiffs also contend Defendants' representations regarding these title companies constitute consumer fraud and deceptive trade practices in violation of Minnesota law.

## II. The Challenged Transactions

### A. Mark Gardner and Diamond Title

On January 28, 2000, Plaintiff Mark Gardner purchased a home at 1100 McCammon Avenue, in Saint Paul, Minnesota. (Robinovitch Aff. Ex. 5 (Gardner Dep.) at 33.) Gardner's realtor, Bridget Schmidt, informed him that Diamond Title, LLP ("Diamond Title") would handle his title examination. (Id. at 34.) Gardner signed a disclosure form indicating that Ms. Schmidt had an ownership interest in Diamond Title. (Robinovitch Aff. Ex. 24 (Gardner Notice Form).) Through a prearranged agreement, Diamond Title referred many of Gardner's settlement services to Universal Title and First American, including closing, title search, and title insurance services. (See Gardner HUD-1 Form (attached to Amended Complaint); Robinovitch Aff. Ex. 144 (Schmidt Aff.) at 44-45.) Diamond Title performed the title examination. (See Gardner HUD-1 Form.) Gardner's closing occurred at Universal Title. (Id.)

Diamond Title is located in Bloomington, Minnesota. (Philipsek Aff. ¶ 12.) It has one leased employee. (Id. ¶¶ 10, 14.) It was formed on January 25, 1999 with twenty-one limited partners who each contributed $500. (Id. ¶ 10.) In addition, Universal Partnerships, as general partner, contributed $2,625, for a total initial capitalization of $13,125. (Id.) As of August 31, 2003, Diamond Title had thirty-two limited partners, a capitalization of $18,875, and a reserve of $40,796. (Id. ¶ 24.)

**B. Danielle Baker and Pinnacle Title**

Plaintiff Danielle Baker purchased a home at 14322 Empire Avenue in Apple Valley, Minnesota, on October 28, 1999. (Robinovitch Aff. Ex. 46 (Baker HUD-1 Form) at 1.) Baker's realtor was Craig Tupy. (Robinovitch Aff. Ex. 149 (Tupy Dep.) at 24, 134-36.) While Pinnacle Title Insurance, LLP ("Pinnacle Title") was the title agency for Baker's transaction, (see Robinovitch Aff. Ex. 54 (Pinnacle Title Memorandum of Charges)), it referred many of Baker's settlement services to Universal Title and First American, including closing, title search, and title insurance services. (See Baker HUD-1 Form (attached to Amended Complaint); Robinovitch Aff. Ex. 149 at 44.) Baker's settlement occurred at Universal Title. (Robinovitch Aff. Ex. 6 at 29.)

Pinnacle Title began doing business on December 1, 1997. (Philipsek Aff. ¶ 11.) It is located in Brooklyn Park, Minnesota, where it operates out of a small office with one leased employee. (Id. ¶ 12.) Its total initial capitalization was $8,125. (Id. ¶ 11.) As of August 31, 2003, Pinnacle Title had 34 limited partners, a capitalization of $21,125, and a reserve of $91,487. (Id. ¶ 24.)

**III. Defendants**

First American Title Insurance Company ("First American") is a national insurance underwriter that issues insurance policies written or committed to by its agents. (Robinovitch Aff. Ex. 1 (Philipsek Dep.) at 20.) Among those agents is Universal Title Company ("Universal Title"), a wholly owned subsidiary of First American that performs

abstracting, title insurance, and closing services. (Id. at 16-17.) Universal Partnerships, Inc. ("Universal Partnerships") is, in turn, a wholly owned subsidiary of Universal Title and acts as the general partner for twenty-four limited-partnership general agencies in Minnesota and one in Missouri, including Diamond Title and Pinnacle Title, the nominal providers of Plaintiffs' settlement services. (Id. at 29.)

## IV. Procedural History and Plaintiffs' Complaint

For a matter concerning such small transactions, this case has left a wide procedural wake. On September 21, 2000, Plaintiffs, on behalf of a putative class, filed a six-count complaint (see Doc. No. 1), which this Court dismissed without prejudice on the ground that Plaintiffs had not alleged federal question jurisdiction, see Gardner v. First Am. Title Ins. Co., Civ. No. 00-2176, slip op. (PAM/SRN) (D. Minn. April 4, 2001) (Magnuson, J.). While the Eighth Circuit eventually reversed that dismissal, see Gardner v. First Am. Title Ins. Co., 294 F.3d 991 (8th Cir. 2002), Plaintiffs, in the meantime, filed a revised three-count complaint in state court, which Defendants promptly removed to this Court. Following the Eighth Circuit's decision, the parties stipulated that they would (1) proceed in the first case, (2) dismiss the second case, and (3) use the three-count complaint from the second case as the complaint in this matter. (See Doc. No. 31.) That complaint was subsequently amended. (See Doc. No. 49.)

In the Amended Complaint, Plaintiffs assert three causes of action. First, Plaintiffs allege Defendants have established sham affiliated business arrangements involving title

companies structured as limited liability companies to facilitate the payment of referral fees and other prohibited things of value in violation of RESPA and other law. (Am. Compl. ¶ 83.) Specifically, Plaintiffs claim Defendants have violated sections 8(a) and 8(b) of RESPA by paying, receiving, or exchanging unearned fees for rendering a settlement service in connection with a transaction involving a federally-related loan other than for services actually performed. (Id. ¶ 87.) Plaintiffs seek injunctive relief, actual damages—including an amount equal to three times the amount of the prohibited fees exchanged—and reasonable attorneys' fees and costs. (Id. ¶¶ 90-91.) Both the trebling of damages and the attorneys' fees are statutory. See 12 U.S.C. 2607(d).

Second, Plaintiffs assert Defendants have entered into contracts with the limited partnerships to be the sole provider of certain real estate and mortgage closing services in violation of RESPA. (Am. Compl. ¶¶ 93-94.) Under Plaintiffs' theory, they had no choice but to use Universal Title as the settlement closing agent and First American as the provider of title insurance. (Id.) As with the first cause of action, Plaintiffs seek injunctive relief, damages equal to three times the amount of any fees exchanged, and attorneys' fees.

Finally, Plaintiffs assert Defendants' purported "sham and hollow title companies" influenced Plaintiffs' fiduciaries to refer Plaintiffs' business to First American and Universal Title in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. §

325D.12-13[1] and § 325D.43-48,[2] and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, et seq.[3] (Am. Compl. ¶ 108.) In connection with these claims, Plaintiffs seek monetary and injunctive relief, as well as attorneys' fees under Minn. Stat. § 8.31. (Id. ¶ 103.)

---

[1] The Minnesota Deceptive Trade Practices Act provides, in pertinent part, "[n]o person engaged in the sale of merchandise at retail shall, in connection with such business, misrepresent the true nature of such business, either by use of the words manufacturer, wholesaler, broker, or any derivative thereof or synonym therefore, or otherwise." Minn. Stat. § 325D.12.

[2] The Act further provides, in pertinent part, that a person engages in a deceptive trade practice when, in the course of business, that person:

> (1) passes off goods or services as those of another; (2) causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; (4) uses deceptive representations or designations of geographic origin in connection with goods or services; (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval status, affiliation, or connection that the person does not have; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

Minn. Stat. § 325D.44.

[3] Under the Minnesota Consumer Fraud Act:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn. Stat. § 325F.69.

On September 9, 2002, Plaintiffs moved for class certification. (Doc. No. 35.) The Court denied Plaintiffs' motion on the grounds that Plaintiffs had failed to meet the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b). See Gardner v. First Am. Title Ins. Co., 2003 WL 211844 (D. Minn. Jan. 27, 2003) (Kyle, J.). Plaintiffs petitioned the Eighth Circuit for interlocutory review of the Court's decision, which the Eighth Circuit denied. (Doc. No. 50.) Following additional discovery, Plaintiffs filed a renewed motion for class certification on September 30, 2003.[4] (See Doc. No. 71.) This Court denied that motion on December 18, 2003. (See Doc. No. __.) On October 22 and 27, 2003, Defendants and Plaintiffs filed the cross motions for summary judgment that are presently before the Court. (See Doc. Nos. 82, 92.)

**Standard of Decision**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). It is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). The Court views the evidence, as well as all reasonable inferences, in a light most favorable to the nonmoving party. See Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996); see Adkinson v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir.

---

[4]Plaintiffs' renewed motion was the subject of a motion to strike, which the Court granted in part. See Gardner v. First Am. Title Ins. Co., 218 F.R.D. 216 (D. Minn. 2003) (Kyle, J.).

1992). The moving party carries the burden of showing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not rest upon the allegations or denials of its pleadings. Rather, the nonmovant must establish the existence of specific facts that create a genuine issue for trial. Neither mere allegations nor denials are sufficient. See Liberty Lobby, 477 U.S. at 256.

On summary judgment, the court does not weigh facts or determine the credibility of affidavits and other evidence. See id. at 249. The nonmovant cannot, however, avoid summary judgment by highlighting some alleged factual dispute between the parties. Instead, the disputed fact must be "outcome determinative under prevailing law"; it must be material to an essential element of the specific theory of recovery at issue. See Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). In essence, the court determines whether there is a need for a trial. Liberty Lobby, 477 U.S. at 250.

**Analysis**

Defendants have moved for summary judgment on Plaintiffs' claims under RESPA and the Minnesota consumer fraud statutes. Defendants contend that Diamond Title and Pinnacle Title satisfy each element of the affiliated business arrangement exception. Moreover, Defendants assert that, because they did not violate RESPA, they cannot be liable under Minnesota law. For their part, Plaintiffs have moved for summary judgment

on the ground that Defendants' disclosures fail to satisfy RESPA. The Court begins its analysis with RESPA.

## I. RESPA , Referral Fees, and Affiliated Business Arrangements

Congress enacted RESPA to ensure greater disclosure of real estate settlement fees and to protect consumers from "unnccessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). Among Congress's goals was "the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." Id. § 2601(b)(2). Accordingly, section 8(a) of RESPA states:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

Id. § 2607(a). Likewise, section 8(b) of RESPA statcs:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

Id. § 2607(b).

RESPA, however, provides a statutory exemption for "affiliated business arrangements."[5] RESPA defines these arrangements as:

---

[5] RESPA also provides other statutory exceptions, including an exemption for the payment of a fee for services actually rendered:

> [n]othing in this section shall be construed as prohibiting (1) the payment of a fee . . . by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance or . . . (2) the payment to any person of

> [A]n arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.

Id. § 2602(7). While RESPA does not permit those referring business to receive fees directly for referrals to such a provider, they may receive a return on that investment. Id. § 2607(c)(4)(C). Thus, under RESPA's affiliated business arrangement exception, a person who refers business to a settlement service provider in which he has an ownership interest can receive compensation, albeit indirectly, based on the financial growth of that provider. Id.

To qualify for this exception, an affiliated business arrangement must meet a four-part test. First, the affiliated business arrangement must disclose the nature of its relationship with the referring individual to the person being referred. Id. § 2607(c)(4)(A). Second, the person being referred must not be required to use any particular provider of settlement services. Id. § 2607(c)(4)(B). Third, the person referring business to the affiliated business arrangement must receive payments only in the form of a return on investment. Id. § 2607(c)(4)(C). Finally, the provider of settlement services must be a "bona fide provider" of such services. See HUD Statement

---

> a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed . . . .

Id. § 2607(c)(1)-(2).

of Policy 1996-2, Regarding Sham Controlled Business Arrangements, 61 Fed. Reg. 29258 (June 7, 1996).[6] Because Diamond Title and Pinnacle Title admittedly compensate their limited partners (see Robinovitch Aff. Ex. 1 at 37-38), the failure of Defendants' partnerships to meet any one of these requirements is sufficient to establish a RESPA violation, so long as no other exception is met.[7] See 12 U.S.C. §§ 2607(a)-(c).

Here, Defendants have moved for summary judgment on the ground that they satisfy these four elements. Plaintiffs, on the other hand, contend that disputes of fact preclude summary judgment on three of the four elements, and therefore only moved for summary judgment as to Defendants' disclosures. The Court begins with the disclosures.

---

[6] HUD has read this requirement onto RESPA's statutory language after finding that "sham arrangements" had arisen as "subterfuge for passing referral fees back to the referring party" without providing actual settlement services. HUD weighs ten factors in determining whether an affiliated business arrangement is a "bona fide" or "sham" service provider: (1) does the entity have sufficient initial capital and net worth; (2) is the entity staffed with its own employees; (3) does the entity manage its own business affairs; (4) does the entity have a separate office; (5) are substantial services provided by the entity; (6) does the entity perform substantial services by itself; (7) if the entity contracts out services, are they from an independent company; (8) if the entity contracts out work to another party, is the party performing any contracted services receiving a payment for services of facilities provided that bears a reasonable relationship to the value of the services or goods received; (9) is the new entity actively competing in the marketplace for business; and (10) is the entity sending business exclusively to one of the settlement providers that created it. Id.

[7] Because the section 8(c) exceptions are expressed in the disjunctive, a transaction between affiliated entities that does not satisfy the affiliated business arrangement exception may still avoid a RESPA violation by satisfying one of the other exceptions. See 12 U.S.C. § 2607(c).

### A. Disclosures

Under RESPA, an affiliated business arrangement must be disclosed to the person seeking settlement services. See 12 U.S.C. § 2606(c)(4)(A) (requiring that "a disclosure is made of the existence of such an arrangement to the person being referred"). HUD's implementing regulations require that the disclosure

> specify the nature of the relationship (explaining the ownership and financial interest) between the person performing settlement services (or business incident thereto) and the person making the referral, and shall describe the estimated charge or range of charges (using the same terminology, as far as practical, as Section L of the HUD-1 or HUD 1-A settlement statement) generally made by the provider of settlement services.

24 C.F.R. § 3500.15(b)(1). HUD provides a standard disclosure form and requires that disclosure be given "in the format of" the HUD-approved form.[8] Id.

Defendants assert that their forms properly disclose the relationship between Plaintiffs' realtors and the partnerships in which they had an interest. Plaintiffs do not contest this point, but rather contend that Defendants must also disclose both the realtors and the limited partnerships' relationships with First American and Universal Title. Plaintiffs are incorrect.[9]

---

[8] While discovery has not uncovered a form signed by Baker, Plaintiffs—because of the problems this poses for their class certification claims—do not contest that she received the form.

[9] In addition, Plaintiffs argue that subsequent referrals to third parties *affiliated* with the provider of settlement services take place in the context of the original affiliated business arrangement and must be disclosed on the original form. Under RESPA, however, an affiliated business arrangement involves only two parties, "a person who is in a position to refer [settlement] business" and "a provider of settlement services," in

The relationships between Plaintiffs' realtors and First American or Universal Title need not be disclosed because those relationships are not affiliated business arrangements. Under RESPA, the term "affiliated business arrangement" describes a relationship in which a person in a position to refer settlement business has either (1) "an affiliate relationship" with, or (2) "a direct or beneficial ownership interest" in a settlement service provider. 12 U.S.C. § 2602(7). Neither condition pertains here. While Plaintiffs seek to avoid these requirements by asserting that the limited partnerships were "sham" entities and that First American and Universal Title were the true parties in interest to the realtors' referrals, those facts—if true—go not to the propriety of Defendants' disclosures, but to whether the limited partnerships qualify as bona-fide service providers.[10] Accordingly, because Plaintiffs' realtors had neither affiliate relationships with nor ownership interests in First American and Universal Title, there was nothing for Defendants to disclose.

---

which either party "directly or indirectly refers such business to *that* provider or affirmatively influences the selection of *that* provider." 12 U.S.C. § 2602 (emphases added). Because subsequent referrals to third parties affiliated with the settlement service provider are not referrals to *that* provider, they do not occur within the context of the original affiliated business arrangement and are not required to be disclosed on that basis.

[10]In oral argument, Plaintiffs responded that these facts go to "both" elements. This answer is belied, however, by Plaintiffs' own briefing, which describes HUD's ten-point test as "[i]rrelevant" to the question of disclosure and as a wholly "separate requirement." (Pls.' Reply Mem. in Supp. of Pls.' Mot. for Summ. J. at 11.)

Defendants were also not required to disclose that the limited partnerships referred[11] a portion of Plaintiffs' settlement business to First American or Universal Title because those transactions are subject to statutory exemptions. Although section 8 of RESPA generally forbids referral fees,

> [n]othing in this section shall be construed as prohibiting (1) the payment of a fee . . . by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance or . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed . . . .

12 U.S.C. § 2607(c)(1)-(2); see also 24 C.F.R. § 3500.14(g)(2) (requiring that any payment bear a "reasonable relation to the market value of the goods or services provided"). Under these section 8(c) exceptions, RESPA exempts First American's split of title insurance premiums with the limited partnerships as "the payment of a fee" for services rendered "in the issuance of a policy of title insurance." 12 U.S.C. § 2607(c)(1).

---

[11] Defendants are simply wrong when they assert that the transactions between the limited partnerships and First American or Universal do not qualify as "referrals." Under HUD regulations, a referral "occurs whenever a person paying for a settlement service or business incident thereto is required to use (see § 3500.2, 'required use') a particular provider of a settlement service or business incident thereto." 24 C.F.R. § 3500.14(f)(2); see also 24 C.F.R. § 3500.2 ("Required use means a situation in which a person must use a particular provider of a settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or in part, to the settlement service."). Clearly, the "contracting-out" of a portion of Plaintiffs' settlement services qualifies under these definitions. Because a thing of value is exchanged—"splits" in the case of First American and the satisfaction of contractual obligations with regard to Universal Title—the relevant question becomes whether Defendants' transactions fall into one of the 8(c) exceptions.

Likewise, RESPA permits the limited partnerships' market value payment to Universal Title "for services actually performed" with regard to Plaintiffs' closings. Id. § 2607(c)(2). These transactions are therefore subject to other RESPA exceptions and need not be disclosed.[12]

Accordingly, Defendants' disclosures satisfy RESPA. As this is the sole ground for Plaintiffs' motion for summary judgment, the Court will deny Plaintiffs' motion. The Court will also grant summary judgment to Defendants on this issue.

**B. Required Use, Return on Investment, and Bona Fide Service Provider**

Defendants have also moved for summary judgment on the final three elements of the affiliated business arrangement exception. Each of these elements, however, is choked with significant disputes of material fact. The second element, for instance, requires that the person being referred not be "required to use any particular provider of settlement services." 12 U.S.C. § 2607(c)(4)(B). While Defendants' form states that persons being referred "are not required to use [the limited partnership]" for settlement

---

[12] While the evidence before the Court relating to the reasonableness of the fees and splits is scant, HUD's places the burden for establishing the unreasonableness of such payments on Plaintiffs. See 24 C.F.R. § 3500.14(g)(2) (stating that facts indicating that a payment bears no reasonable relation to the market value of the services provided "may be used as evidence of a violation of section 8"). This is certainly so in the analogous context of yield spread premiums, see Schmitz v. Aegis Mortg. Corp., 48 F. Supp. 2d 877, 882 (D. Minn. 1999) (Doty, J.), where HUD requires a determination of (1) whether "services were actually performed," and (2) "whether the amounts of the payments are reasonably related to the value of these . . . services," Glover v. Standard Fed. Bank, 283 F.3d 953, 964 (8th Cir. 2002). Here, it is undisputed that the services were actually performed, and there is no evidence before the Court to suggest that the payments were not reasonably related to the value of the services provided (see Philipsek Aff. ¶ 17).

services, Plaintiffs' testimony—viewed in the appropriate light—is sufficient to generate the inference that Plaintiffs' realtors did not conduct themselves in accord with the form. Likewise, the third element, which requires that the limited partners only receive "a return on the[ir] ownership interest[s]," is potentially clouded by Defendants' practice of grouping realtors according to their potential to refer business. Finally, HUD's ten-point "balancing test" for bona fide settlement service providers is particularly unwieldy in the context of summary judgment. Not only do Defendants concede that each point is not met, but virtually every contested factor is buried under a blizzard of disputed fact.[13]

Each of these elements presents triable issues. The Court will therefore deny Defendants' motion with regard to the final three elements of the affiliated business arrangement exception.

## II. Minnesota Trade Practices Act and Unlawful Trade Practices Act

In addition to their claims under RESPA, Plaintiffs have bootstrapped several state law claims to the evidence supporting their claims under federal law. Accordingly,

---

[13] For the first time in oral argument, Defendants sought to downplay the importance of the bona fide service provider requirement, stating, in essence, that it carried all the legal force of a "press release" from HUD. See contra Glover, 283 F.3d at 962 ("HUD's Policy Statements interpreting its own ambiguous regulation are controlling authority unless they are plainly erroneous or inconsistent with the regulation or the purpose of RESPA."). Putting the merits of this argument to one side, what makes this statement so jaw-dropping is the degree to which Defendants have relied upon HUD's ten-point test in the course of previous briefing. Having blanketed the Court with scores of pages relying upon HUD's ten-point test as an insurmountable barrier to class certification, Defendants cannot simply push it aside when it suits their interests. In short, having made their substantive bed, Defendants must now lie in it.

Plaintiffs allege that Defendants' business practices also constitute violations of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.43 et seq. ("MDTPA"), and the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69 et seq. ("MPCFA").[14] The fit, however, between the facts generated to support Plaintiffs' RESPA claims and the Minnesota consumer fraud statutes is an uneasy one, and Defendants contend that summary judgment is appropriate on Plaintiffs' state law claims. The Court agrees.

Plaintiffs assert that Defendants' organizational scheme and representations regarding it amount to a deceptive trade practice. Under Minnesota law, however, the "sole statutory remedy for deceptive trade practices is injunctive relief." Simmons v. Modem Aero, Inc., 603 N.W.2d 336, 339 (Minn. Ct. App. 1999) (quoting Alsides v. Brown Inst., Ltd., 592 N.W.2d 468, 476 (Minn. Ct. App. 1999). "Because the MDTPA provides [injunctive] relief for a 'person likely to be damaged,' it provides relief from future damage, not past damage." Lofquist v. Whitaker Buick-Jeep-Eagle, Inc., 2001 WL 1530907, at *2 (Minn. Ct. App. Dec. 4, 2001). Here, the evidence before the Court does not indicate a likelihood of future harm. Although Plaintiffs try to fill this evidentiary gap with argument, this case is now at summary judgment and Plaintiffs must advance *record evidence* sufficient to support an inference of future harm to Plaintiffs. Cf. Arkansas

---

[14]Plaintiffs have not contested summary judgment on their claim under the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09 et seq. The Court will therefore dismiss that claim.

ACORN Fair Housing, Inc. v. Greystone Dev. Ltd. Co., 160 F.3d 433, 434 (8th Cir. 1998) (plaintiff at summary judgment must demonstrate standing by advancing specific facts). They have not done so.[15] Accordingly, the Court will grant Defendants' motion for summary judgment with regard to Plaintiffs' MDTPA claim.

Summary judgment is also appropriate on Plaintiffs' MPCFA claim. While Plaintiffs assert that Defendants' failure to disclose their relationship with the limited partnerships establishes a claim under the MPCFA (Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. at 31), the Court has found that Defendants' disclosures are entirely appropriate. (See Analysis § I.A, supra.) Because Defendants have disclosed all they needed to disclose, was no actionable omission under the MPCFA. The Court will therefore enter summary judgment on that claim.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. No. 82) is **GRANTED IN PART**:

   a. Defendants' disclosures satisfy 12 U.S.C. § 2607(c)(4)(A); and

---

[15] Plaintiffs only citation to the record is to their responses to requests for admissions, in which Plaintiffs stated that "it is *possible* that Plaintiff[s] will transact with one of the Defendants in the future." (See Robinovitch Aff. Exs. 116 & 118 (emphasis added).) Of course, the MDTPA grants its expanded standing only to those "*likely* to be damaged by a deceptive trade practice," Minn. Stat. § 325D.45 (emphasis added), not to those for whom such damage is a mere possibility.

b. Count III of the Amended Complaint (Doc. No. 49) is hereby **DISMISSED WITH PREJUDICE**;

2. Plaintiffs' Motion for Summary Judgment (Doc. No. 92) is **DENIED.**

Dated: December 19, 2003

RICHARD H. KYLE
United States District Judge